<u>PRECEDENTIAL</u>

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-4351

IN RE: COLOR TILE INC.,

Debtor

MICHAEL R. BUCHANAN, OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,
as Disbursing Agent Under the Plan of Liquidation (Formerly
the Official Committee of Unsecured Creditors of Color Tile
Inc., et al.),

Appellant

v.

RELIANCE INSURANCE COMPANY; BLACKSTONE
FAMILY INVESTMENT PARTNERSHIP; PILGRIM HIGH
YIELD TRUST; BANKERS TRUST CO.; IDS EXTRA
INCOME FUND, INC.; DAN LUFKIN; ELISE LUFKIN;
NORTHERN TRUST COMPANY, AS TRUSTEE OF A
MASTER TRUST FOR THE BENEFIT OF THE ALLIED
SIGNAL, INC.; ALLIED SIGNAL CORP.; PRUDENTIAL
HIGH YIELD FUND, INC.; PRUDENTIAL INSURANCE
COMPANY OF AMERICA, AS INVESTMENT
MANAGER FOR THE GENERAL MOTORS HIGH YIELD
ACCOUNT; GENERAL MOTORS, General Motors High
Yield Account; PRUDENTIAL SERIES FUND, INC.;
RIVERSIDE CAPITAL ADVISORS, INC.; BEARS,

STERNS & COMPANY, INC.; MORGAN GUARANTY
TRUST CO. OF NEW YORK; ATWELL & CO; HOW &
CO; KELLY & CO.; BTC US HIGH YIELD FUND;
NORTHEAST INVESTORS TRUST; NORTHSTAR HIGH
YIELD BOND FUND; SALOMAN BROTHERS, INC.;
STATE STREET RESEARCH STRATEGIC GROWTH &
INCOME FUND; STATE STREET RESEARCH INCOME
TRUST; STATE STREET RESEARCH EQUITY TRUST;
STATE STREET RESEARCH INVESTMENT SERVICES,
INC.; STATE STREET RESEARCH GROWTH TRUST;
METROPOLITAN LIFE INSURANCE COMPANY

On Appeal from the United States District Court
for the District of Delaware
District Court No. 98-cv-358
District Judge: The Honorable Sue L. Robinson

---

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 13, 2006

Before: FUENTES and SMITH, *Circuit Judges*,
and YOHN, *District Judge*[*]

(Filed: January 26, 2007)

I. Connor Bifferato, Esq.
Joseph K. Koury, Esq.

---

[*]The Honorable William H. Yohn, Jr., Senior District Judge
for the Eastern District of Pennsylvania, sitting by designation.

2

Bifferato, Gentilotti, & Biden
1308 Delaware Ave.
Wilmington, DE 19806

David F. Heroy, Esq.
Brian E. Martin, Esq.
Kevin Y. Pak, Esq.
Bell, Boyd & Lloyd, LLC
70 West Madison, Suite 3300
Chicago, IL 60602
*Counsel for Appellant*

Paul A. Bradley, Esq.
A. Richard Winchester, Esq.
James J. Freebery, Esq.
McCarter & English, LLP
919 N. Market St., Suite 1800
Wilmington, DE 19801-3023
*Counsel for Appellees*

_____

## OPINION
_____

SMITH, *Circuit Judge*.

### I.

Appellant Michael Buchanan argues that the District Court's grant of the defendant's Motion for Summary Judgment

should be reversed because the amended complaint in this case relates back to the original complaint under Federal Rule of Civil Procedure 15(c), thereby precluding a grant of summary judgment on statute of limitations grounds. Because we believe that, with the information that was available to it, the District Court could not properly determine as a matter of law that the defendant did not receive imputed notice under Rule 15(c), we will vacate the District Court's decision and remand for further factfinding.[1]

## II.

This case involves an appeal by the plaintiff, the Disbursing Agent Under the Plan of Liquidation (formerly the Official Committee of Unsecured Creditors of Color Tile, Inc. ("the Committee")). The Committee appealed to this Court

---

[1] We note in passing that we deny the plaintiff's motion to take judicial notice of Section 19b-4 of the Securities Exchange Act of 1934, codified at 17 C.F.R. § 240.19b-4, and an apparent response by the Depository Trust Company to a questionnaire by the International Organization of Securities Commissions. *See Berwick Grain Co., Inc. v. Ill. Dept. of Agric.*, 116 F.3d 231, 234 (7th Cir. 1997) ("The appellate stage of the litigation process is not the place to introduce new evidentiary materials. To grant such motions not only would promote inefficient allocation of judicial resources, but also would deny non-movants fair notice of the record they are to confront on appeal.") (parenthetical citation omitted).

from an order granting summary judgment to defendant State Street Research Investment Services, Inc. (and affiliated mutual fund defendants) ("State Street Research").

The Depository Trust Company ("DTC") is an association of more than 200 brokerage houses and financial institutions which was formed pursuant to Congressional mandate for the purpose of owning shares for the beneficial interest of customers. Cede & Co. ("Cede") is the name used by DTC to hold shares that it owns. Among other services not relevant here, Cede transmits the dividends received from issuers to the beneficial owners, through "participating" or "depository" banks acting as conduits. *In re Color Tile Inc.*, 92 Fed. Appx. 846, 847-48 (3d Cir. 2004). State Street Bank ("the Bank") acted as State Street Research's conduit with respect to the Color Tile shares held in Cede's name. In short, DTC functioned as a sub-agent for the State Street Bank, who in turn operated as an agent for State Street Research (the principal).

In February 1998, the Committee served its initial complaint against Cede upon DTC. The Committee did not serve its amended complaint on State Street Research until March 2001–after the statute of limitations had run against State Street Research. The Committee's allegations arise out of Color Tile's payment of $10 million in dividends to certain of its stock holders, shortly before it filed for Chapter 11 bankruptcy. The Committee alleges that the dividends were fraudulently transferred, and seeks return of the dividends from the stock

holders, including State Street Research. State Street Research was added as a defendant in 2001 because the Committee discovered that State Street Research had been a beneficial owner of Color Tile stock at the time that the dividends were paid. The 1998 complaint was otherwise unmodified.

In April 2002, the District Court of Delaware granted State Street Research's motion for summary judgment on the ground that the Committee's 2001 complaint was time barred. The Court held that the Committee failed to demonstrate that State Street Research had received notice of the 1998 complaint, as required under Federal Rule of Civil Procedure 15(c)(3)(A), and therefore the 2001 complaint could not "relate back."

The Committee appealed the grant of summary judgment and this Court vacated and remanded the case. *In re Color Tile Inc.*, 92 Fed. Appx. 846 (3d Cir. 2004) (*Color Tile I*). This Court in *Color Tile I* determined that the Rule 15 notice issue could not be determined without further factual development. The Court remanded the case for limited discovery directed to (1) whether State Street Bank received actual notice of the complaint from DTC; and (2) whether the scope of DTC's obligations to the Bank included forwarding notice of complaints in such a manner that they would reach State Street Research.

On remand, the District Court conducted a two-day evidentiary hearing and issued an opinion on October 6, 2004.

The Court granted State Street Research's motion for summary judgment and concluded that the Second Amended Complaint did not relate back to the original complaint under Rule 15(c) because State Street Research had no notice of the initial suit brought against DTC/Cede.

### III.

The District Court had jurisdiction over State Street Research's motion for summary judgment pursuant to 28 U.S.C. § 1334. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. Our standard of review over the District Court's grant of summary judgment is plenary, and we "apply the same standard that the District Court should have applied." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 441 F.3d 141, 146 (3d Cir. 2005) (internal citations omitted); *DeRienzo v. Harvard Indus., Inc.*, 357 F.3d 348, 352-54 (3d Cir. 2004); *Becton Dickenson & Co. v. Wolckenhauer*, 215 F.3d 340, 343 (3d Cir. 2000). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). This Court will, in applying this standard, "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman*, 441 F.3d at 146.

IV.

The primary issue for this Court to address on plenary review is whether the District Court properly concluded, at the summary judgment stage, that State Street Research had no notice of the original February 1998 complaint brought against DTC/Cede.

We note at the outset that the District Court in its October 6, 2004 opinion concluded that State Street Bank "was obligated to forward complaints it received regarding its clients' securities" to State Street Research. The District Court drew support for this position from § 2.14 of the Bank's Custodian Agreement, which states that it "*shall* transmit" all written information it received pertaining to the securities it held for its clients. However, the District Court stated that "[b]ecause the court has already concluded that [the Bank] did not receive notice of the original complaint, its obligation to forward the original complaint is irrelevant."

The District Court took an extremely narrow view of what constitutes actual notice. The Court held that "[n]either State Street Bank nor defendants received actual notice of the original complaint." In examining the scope of actual notice, the Court looked only at whether the Bank (the agent) or State Street Research (the principal) examined or physically received the complaint from DTC (the sub-agent). Because the District Court has already concluded that the Bank needed to forward

8

the complaint to State Street Research if the Bank received it, the only question we must answer is whether DTC had an obligation to forward the complaint to the Bank.

The District Court viewed imputed notice as a form of constructive notice. This Court in *Singletary v. Pa. Dept. of Corrs.*, 266 F.3d 186, 195 (3d Cir. 2001) suggested that, for the purposes of the relation back doctrine, notice can be "actual, constructive, or imputed." The *Singletary* panel apparently considered imputed notice as a form of constructive notice. *See id.* at 189. In *Garvin v. City of Philadelphia*, 354 F.3d 215 (3d Cir. 2003), we followed *Singletary* for the proposition that imputed notice falls under the doctrine of constructive notice, so that imputed notice under Rule 15(c)(3) requires either a shared attorney or an identity of interests. *See id.* at 222-27.

The type of imputation at issue in *Singletary* and *Garvin*, however, differs from what we are presented with in this case. Here, the plaintiffs are attempting to impute *knowledge* from a sub-agent to an agent (and therefore the principal), as opposed to imputing notice under Rule 15(c)(3). Imputing knowledge from an agent to a principal must be analyzed according to principles of actual notice rather than constructive/imputed notice. In *Singletary*, the primary issue was whether a plaintiff could amend her complaint to include a staff psychologist in a § 1983 case brought by the mother of a prisoner who committed suicide in a state correctional institution. 266 F.3d at 189. In *Garvin*, the relevant issue was whether a complaint could be

9

amended to include several police officers in an excessive force case. 354 F.3d at 220. Both of these cases dealt with imputed notice in the context of whether the actors who actually committed the allegedly tortious and unconstitutional acts could be added to the complaint. Neither of these cases addressed the issue that confronts this panel. Here, we are simply analyzing whether, as a matter of law, an agent and a principal should be deemed to have received actual notice when their sub-agent receives knowledge within the scope of its employment by the agent. As a matter of basic agency law, imputed knowledge falls under the rubric of actual notice rather than imputed (and therefore constructive) notice. The key difference between the *Singletary/Garvin* line of cases and the situation here is that, in the former context, a plaintiff seeks to impute notice against a defendant who allegedly perpetrated the act or acts at issue in the complaint. In the agency context, however, the plaintiff seeks to add a party to whom actual knowledge should be imputed based on agency principles.

Where an agent receives notice, that notice is imputed to the principal. *Am. Sur. Co. v. Pauly*, 170 U.S. 133, 153 (1898) ("It is the rule that the knowledge of the agent is the knowledge of his principal, and notice to the agent of the existence of material facts is notice thereof to the principal, who is taken to know everything about a transaction which his agent in it knows."). *See also Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773 n.4 (4th Cir. 1995) (stating that "the knowledge imputed to the principal is considered *actual knowledge, not*

*constructive*") (emphasis added); *Higgins v. Shenango Pottery Co.*, 256 F.2d 504, 509 (3d Cir. 1958) (noting that "it is a rule of agency that the knowledge of the agent is imputed to the principal in connection with any transaction conducted by the agent in behalf of his principal"); *Tonelli v. United States*, 60 F.3d 492, 495 (8th Cir. 1995) ("As a general rule, notice to an agent is effective if the agent has a duty to receive that knowledge and report it to the principal.") (citation omitted); *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) ("In general, when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-à-vis a third person the agent's knowledge is imputed to the principal.") (citations omitted); *N. Assur. Co. of Am. v. Summers*, 17 F.3d 956, 964 (7th Cir. 1994) (stating that "knowledge of an agent is ordinarily to be imputed to the principal," but not when a third party acts with the agent contrary to the interests of the principal) (citation omitted). This imputation applies to sub-agents as well; from sub-agent to agent, and then from agent to principal. *See* RESTATEMENT (SECOND) OF AGENCY § 283(a).

With this framework outlined, the next issue to examine is the relationship between DTC and State Street Bank. The bulk of the Committee's notice arguments turn, at the outset, on whether DTC had an obligation to the Bank to forward the complaint against Cede. If DTC had such an obligation, then it also had such authority, and if DTC had such authority, it was

11

within the scope of DTC's agency.

Against the backdrop of basic agency law is the fact that any duty DTC had to the Bank is governed by the parties' contract. *See* RESTATEMENT (SECOND) OF AGENCY § 428. In this case, the contract we look to is the participation agreement. A threshold issue for the Committee, then, is whether passing on complaints in a manner that they would be received by beneficial stock owners (like State Street Research) was within DTC's scope of agency by the Bank, and in the Bank's scope of agency by State Street Research, as set forth in the parties respective agreements.[2] The clearest indication of DTC's

---

[2] The Committee also argues that DTC had the obligation to forward the complaint to the Bank completely independent of its agreement with the Bank (it argues likewise for the Bank and State Street Research). The argument is based on the rule of "apparent authority," which "'arises in those situations where a principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship." *Am. Tel. & Tel. Co. v. Winback and Conserve Program*, 42 F.3d 1421, 1439 (3d Cir. 1994) (quoting *Barticheck v. Fidelity Union Bank/First Nat'l State*, 680 F. Supp. 144, 148-49 (D.N.J.1988)). The Committee fails, however, to cite any evidence suggesting that State Street Research or the Bank caused the Committee to believe that DTC was invested with the authority to receive service of process for State Street Research, or to forward complaints to State Street Research. The Committee has only pointed to the undisputed fact that the Color Tile shares were held in Cede's name, and

obligation to forward the complaint comes from Rule 6 of the Rules and By-Laws and Organization Certificate of DTC, which states:

> Subject to the provisions of these Rules and the Procedures, the Corporation, acting in accordance with duly authorized instructions from the Participant or Participants and the Pledgee or Pledgees, if any, having an interest in the transaction, *shall* . . . deliver dividends, distributions, rights, securities, proxy material and other property or documents received by the Corporation with respect to a Participant's Deposited Securities or Pledged Securities, *except as provided below in this Rule or in the Procedures*.

---

that Delaware and New York law required that the complaint be served on the registered owner of the stock. The Committee does not contend that state law prohibited serving the complaint on the beneficial owner too. Critically, the Committee does not contend that it was unaware of how DTC works. Any sophisticated party like the Committee knew or should have known that DTC holds shares in "street name" for beneficial owners—the Committee nowhere suggests it was lead to believe anything to the contrary.

13

(emphasis added).  The plaintiffs argue that "other property or documents," in the context of a Participant's Deposited Securities, should be read to include a complaint because it so closely relates to DTC's duty to deliver dividends to the Bank (and therefore State Street Research).  This view of Rule 6 comports with *Color Tile I*.  As our panel then stated, "[i]t would seem to us untoward that a depository bank that acts as a conduit for the transmission of dividends (which perforce it must transmit) and keeps the financial record of these transmissions, would not have the obligation to notify the beneficiaries of a claim to recover some of these same dividends." *Color Tile I*, 92 Fed. Appx. at 851.  Further, the panel stated that "there seems to be no doubt of the obligation of DTC or its nominee to notify the depository bank of its claim." *Id*.

After further discovery on remand, however, the parties have supplemented the record to include an internal operating procedure (IOP) that, according to State Street Research, limits the applicability of Rule 6.  Susan Geigel, DTC's Director of Legal and Regulatory Compliance, refers in her declaration to a written IOP (attached to her declaration) which provides that

> [f]rom time to time, DTC receives notices and other documents and communications concerning securities that are or were credited to Participants' DTC accounts.  Although DTC may make certain of such documents and communications . . . available to Participants, *it shall be under no*

14

> *obligation to do so* nor, having once or more done so, shall DTC have a continuing obligation to make available Information of a certain type. Therefore, Participants are advised to obtain and monitor Information independently.

(hereinafter the "Geigel IOP") (emphasis added).

Rule 6 refers to "documents" but does not specify "complaints" or "legal notices," and the Geigel IOP (which, according to the Committee, limits Rule 6) refers to "notices and other documents," but is otherwise non-specific.  Under this view, DTC's rules and procedures are ambiguous as to whether DTC "shall" forward a complaint (under Rule 6) or "shall be under no obligation to do so" (under the Geigel IOP).

This ambiguity must be resolved according to basic principles of contract law.  By its own terms, the participant agreement is governed by New York law.  Rule 6, which is incorporated into the participant agreement, is one of DTC's by-laws.  "It is well established that '[t]he rules of contract interpretation are generally applicable to the interpretation of bylaws.'" *IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370, 374 (2d Cir. 1994) (quotation omitted). Moreover, here, DTC's by-laws are expressly incorporated into the Bank's "participant agreement" with DTC, and bind the Bank to DTC's by-laws and rules.

Geigel's declaration and testimony are State Street

15

Research's primary evidence that the Geigel IOP rather than Rule 6 applies to legal complaints. Geigel's declaration states that the "notices and other documents and communications concerning securities" referred to in the Geigel IOP include complaints, and that because of this IOP, no participant could reasonably expect that DTC would forward a complaint. Geigel also stated more generally that "DTC does not interpret Rule 6, nor was Rule 6 intended, to create an obligation or expectation that DTC would deliver complaints or act as an agent for the Participants for service of legal process."[3]

---

[3] Another of DTC's IOPs specifies which legal notices are not, at least upon first receipt, to be posted on DTC's electronic notice service used by participants (LENS and LENL). This "legal notices IOP" provides that "Defendant" and "Dividend" are key words used to identify items that should not be published, and also provides that the "[i]tems where Cede & Co., or DTC is listed as a defendant," should not be published, and should be forwarded to the legal department. State Street Research (and the District Court) cite the legal notice IOP as further evidence that DTC had no obligation to publish the complaint in this case because the terms of the IOP exclude it from publication. The problem with the argument is that the legal notice IOP is only relevant to publication of electronic notice and does not purport to govern the legal department's handling of the complaint if it is apparent that it relates to securities credited to a participant's account. The Committee, of course, argues that Rule 6 is the rule that the legal department was obligated to follow.

16

Given two conflicting but reasonable interpretations, a contract will be viewed as ambiguous at this early stage in the litigation. *See Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir. 1994) (applying New York law). "As a general matter, we have held that when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate." *Id*.

Here, the parties each offer reasonable, but conflicting interpretations of Rule 6 and the Geigel IOP. *See* 11 WILLISTON ON CONTRACTS § 32:14 (4th ed.) ("Given that the purpose of judicial interpretation is to ascertain the parties' intentions, the parties' own practical interpretation of the contract . . . can be an important aid to the court."); RESTATEMENT (SECOND) OF CONTRACTS § 202 cmt. g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning.").

We do not in this opinion analyze every piece of evidence produced by both sides. Such factfinding and interpreting is best left for trial. The ambiguity arising as a result of competing interpretations of DTC's forwarding obligations is enough to foreclose the possibility of summary judgment on this issue. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir. 2001) ("When the language of a contract is ambiguous and there is relevant extrinsic evidence regarding the actual intent of the parties, an issue of fact is presented for a jury to resolve, thereby precluding summary judgment."). "Only in

17

the rare case is the extrinsic evidence so one-sided that no reasonable factfinder could find to the contrary, in which event the court should resolve the ambiguity as a matter of law." *Id.* (applying New York law).

## V.

For these reasons, we will vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.